Eva R. Gardner
Benjamin J. Farkash
ASHBURN & MASON, P.C.
1227 West Ninth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 276-4331
E-mail: eva@anchorlaw.com, ben@anchorlaw.com
*Attorneys for Plaintiff Heather MacAlpine*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| HEATHER MACALPINE,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF ANCHORAGE; DAVID BRONSON in his official capacity as Mayor of the Municipality of Anchorage; NIKI TSHIBAKA in his official capacity as an employee of the Municipality of Anchorage; MATTHEW JENDRUSINA in his official capacity as an employee of the Municipality of Anchorage; RAYLENE GRIFFITH in her official capacity as an employee of the Municipality of Anchorage; and OTHER PERSONS RESPONSIBLE, as they become known,<br><br>Defendants. | Case No. 3:23-cv-_____<br><br><br>**COMPLAINT** |

Plaintiff Heather MacAlpine, by and through counsel, alleges the following:

## NATURE OF THE CASE

1. Heather MacAlpine, as the director of the Office of Equal Opportunity ("OEO") within the Municipality of Anchorage ("MOA"), was charged with protecting the citizens of Anchorage from unlawful discrimination. Yet on May 11, 2022, at a meeting where Ms. MacAlpine thought she would be discussing claims of unlawful discrimination made by employees of the Anchorage Public Library ("APL") about the library's acting director, JE, she was abruptly terminated. Ms. MacAlpine was terminated because JE was socially and politically connected with Mayor David Bronson and other high-ranking personnel in his administration. Rather than investigate the serious charges by APL employees regarding an allegedly hostile work environment at APL's Loussac location ("Loussac"), MOA terminated Ms. MacAlpine. This suit seeks to hold MOA accountable and vindicate Ms. MacAlpine's rights.

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 1343 and under 42 U.S.C. § 2000-e5(f)(3).

3. This court has jurisdiction over defendants because MOA is a home-rule municipality of the State of Alaska and may be served within the District of Alaska.

4. Venue is proper in this court because all of the events giving rise to Ms. MacAlpine's claims occurred in the District of Alaska.

## PARTIES

5. Plaintiff Heather MacAlpine is an individual residing in Anchorage, Alaska.

6. Defendant MOA is a home rule municipality in the state of Alaska.

7. All other Defendants are employees of MOA named in their official capacities.

## FACTS GIVING RISE TO CLAIMS

1. In 2015, MOA hired Ms. MacAlpine as Director of the Office of Equal Opportunity. In this role, she was responsible for ensuring that MOA provide equitable, non-discriminatory opportunities across the board. Her duties included working with individuals to identify and recommend means of resolving problems and concerns affecting MOA and providing training to MOA regarding Title VI and Title VII. She served in this position for seven years, under three different mayoral administrations. The MOA never disciplined, reprimanded, or provided a negative review of Ms. MacAlpine's job performance.

2. As part of her job, Ms. MacAlpine served as a resource for MOA employees who were experiencing discriminatory treatment in the workplace. Ms. MacAlpine was tasked with elevating any significant issues to Human Resources ("HR") or the Department of Law.

3. On April 1, 2022, an employee at Loussac reported to Ms. MacAlpine that APL's Deputy Director JE had created a hostile and discriminatory work environment.

4. The employee ("Employee A") and a co-worker ("Employee B") had previously complained in writing to MOA Ombudsman Darrel Hess regarding the hostile work environment. Mr. Hess recommended to the employees that they should contact Ms. MacAlpine. Employee A provided information orally and in writing to Ms. MacAlpine.

5. According to Employee A, JE made the following discriminatory statements:

   a. Using the term "Eskimo" to refer to Alaska Natives, JE stated that [Alaska Natives] "diddle their kids" and infect them with venereal disease;

   b. She stated that Alaska Natives have "FAS [fetal alcohol syndrome] babies" and send them to Anchorage to avoid having to take care of them;

   c. JE repeatedly stated to multiple individuals that she perceived Employee B to be neurodivergent, specifically, that she believed Employee B to have Asperger's Syndrome. JE also stated that she had told the Mayor not to promote Employee B.

   d. She referred to "a children's book about drag queens" as "filth."

   e. She stated "The atmosphere here has gone downhill with woke movements like Black Lives Matter…I'm telling you, the woke culture is killing libraries and this country. If I could get rid of those employees, I could turn this library around for the good."

COMPLAINT
*MacAlpine v. Municipality of Anchorage et al.*, Case No. 3:23-cv-_____  Page 4 of 13

6. Employee A reported that these and other statements made (and actions undertaken) by JE rendered Loussac a toxic, hostile, discriminatory, and stressful work environment. JE's conduct made Employee A cry on a daily basis at work and experience adverse mental health effects even outside of working hours. In addition, since the time JE was appointed, numerous senior-level Loussac employees (including the Adult Services Supervisor, Collection Development Manager, Assistant Director of Public Services, and Adult Services Manager)—resigned their positions because of the hostile work environment created by JE.

7. This staff exodus has been so extreme that the Library Advisory Board, which exists pursuant to AMC 4.60.040, sent a letter expressing concern about the Loussac situation to Mayor Bronson and Municipal Manager Amy Demboski on May 15, 2022. As of that date, the Library Advisory Board estimated that there were at least 24 open and funded positions in the Anchorage Library System, but only 4 were posted on the MOA website. A true and correct copy of the letter is attached as Exhibit 1.

8. Concerned about the Loussac situation because of its effect on both employees and MOA more broadly, Ms. MacAlpine contacted HR by e-mail to request a meeting to discuss the situation at Loussac.

9. Ms. MacAlpine's job duties required her to assist employees who complained to her about discrimination in the workplace so that she could help them defuse those situations where possible, or escalate their complaints to the next level, such

as HR, where appropriate. Had Ms. MacAlpine not reported the employees' concerns, she would have been derelict in her duties.

10. Shortly after requesting a meeting, Ms. MacAlpine met with two HR representatives, Senior Management Specialist Adan Garcia and Management Services Director Matthew Jendrusina. Mr. Jendrusina attended via Microsoft Teams. Mr. Garcia and Mr. Jendrusina assured Ms. MacAlpine that they would investigate the situation if Loussac employees came forward directly to HR with complaints.

11. Ms. MacAlpine shared this information with Employee A. Employee A was fearful of retaliation for speaking out, and reluctant to disclose their identity by complaining directly to HR. However, because the Loussac situation was intolerable and no other recourse was available, Employee A did eventually contact HR and reported their concerns to Mr. Garcia.

12. On information and belief, at least four other Loussac employees contacted HR in or around this timeframe as well, making similar complaints regarding JE's conduct. Contrary to Mr. Jendrusina and Mr. Garcia's assurances to Ms. MacAlpine that they would take appropriate action if library employees came forward, HR was dismissive of the employees' concerns and refused to pursue an investigation.

13. The problems at Loussac continued and employees continued to resign. Ms. MacAlpine was contacted again by one or more Loussac employees and asked to visit Loussac and speak with other employees.

14. On May 3, 2022, Ms. MacAlpine visited Loussac and spoke with several employees who shared concerns regarding JE.

15. Employee B shared that JE had made the following offensive and discriminatory statements (paraphrased):

   a. Books about transgender children "filled their heads with dangerous thoughts."

   b. There are too many "liberals" working in libraries.

   c. "Men needed to have a more active role selecting books for boys and men because women don't know what they want to read."

   d. JE threatened the employee with retaliation ("wringing their neck" or "getting back at them") if they repeated her comments.

16. Other employees similarly reported that JE regularly made statements that were racist and discriminatory against Alaska Natives; discriminatory against disabled individuals; politically discriminatory; sexist; and prioritized "male Christians" over other groups. They also reported that she had instructed security to enforce Loussac's "one bag" policy—allowing patrons to bring only one bag into the library—in a selective, discriminatory way. Specifically, she instructed security not to enforce the policy against "mothers with diaper bags," but to enforce it strictly against individuals who appeared homeless, many of whom appeared to be Alaska Native.

17. Ms. MacAlpine emailed Mr. Garcia and Mr. Jendrusina again, this time copying Deputy Municipal Attorney BC in the Department of Law, asking for another

meeting to address the situation at Loussac. Ms. MacAlpine had previously emailed Ms. Christensen twice about the Loussac situation, but received no response. This time, Ms. Christensen responded stating that they should meet. They arranged a meeting on May 11, 2022.

18. On May 11, 2022, Ms. MacAlpine arrived at the meeting at HR prepared to discuss the problems at Loussac. By this point, multiple Loussac employees had made complaints to HR, so Ms. MacAlpine expected that the additional information she had learned would be helpful in HR's investigation.

19. Mr. Jendrusina and MOA Labor Relations Director Raylene Griffith were present at this "meeting." Rather than address the Loussac situation, they instead informed Ms. MacAlpine that MOA no longer needed her services and that she was being terminated effective immediately. They gave no reason for the termination beyond saying that Ms. MacAlpine served at the pleasure of the Mayor. The MOA provided a letter indicating the same. A true and correct copy of this letter is attached Exhibit 2.

20. Ms. MacAlpine's termination was a surprise. Just a few weeks prior, she and a coworker had spoken with her direct supervisor, MOA Chief Equity Officer Junior Aumavae, about a pay raise. Mr. Aumavae assured Ms. MacAlpine and her colleague that he was actively working to secure pay raises for them. Ms. MacAlpine later met with Mr. Aumavae and MOA Chief HR Officer Niki Tshibaka about the issue. Mr. Tshibaka was supportive, stating that although there was not enough room in the budget to

accommodate a raise this year, HR would work on implementing one for the following year.

21. Mr. Tshibaka made several suggestions about how Ms. MacAlpine could seek additional funding for her office, recommended she put the request in writing, and requested that they meet again later to revisit the issue. Mr. Tshibaka evidently considered Ms. MacAlpine to be a satisfactory employee with anticipated longevity in her position. Mr. Aumavae, her direct supervisor, also appeared to consider Ms. MacAlpine to be a satisfactory employee with anticipated longevity. He had encouraged Ms. MacAlpine to raise the pay issue, told her several times that he "had her back" and was advocating for her with the Mayor. He described himself as "the Mayor's right-hand man."

22. Despite her good standing and stellar job performance, MOA terminated Ms. MacAlpine for reporting the complaints made by MOA employees regarding JE's conduct.

23. On information and belief, Mayor Bronson, Mr. Tshibaka, Mr. Jendrusina, and Ms. Griffith were all aware that Ms. MacAlpine had reported JE's problematic conduct, and they deliberately terminated her in retaliation for those reports.

24. On information and belief, MOA Mayor David Bronson had committed to not terminating (or even meaningfully investigating or disciplining) JE irrespective of her conduct. JE stated the following to various library employees:

    a. The Mayor called her "looking for the biggest bitch he could find" to place at Loussac and "knew he was placing her in a viper's nest."

b.  "The mayor picked me, he put me here for a reason – he won't fire me."

c.  "I'm a tough cookie, I don't give a shit what anyone here thinks."

d.  "I'm untouchable. No one can fire me in my position. [Municipal Manager] Amy Demboski told me I'm untouchable."

25. On information and belief, to date, the MOA has failed to conduct an appropriate investigation into JE's conduct towards employees at Loussac.

26. On information and belief, HR has received instructions from Mayor Bronson, or someone acting on his behalf, not to investigate JE or take any disciplinary action against her.

27. This favoritism is a matter of public knowledge. On June 15, 2022, Mr. Tshibaka participated in a public meeting of the Library Advisory Board. Mr. Tshibaka identified himself as being present in his official capacity.

28. Although Mr. Tshibaka, in his official capacity, was responsible for impartially investigating and remedying alleged violations of the law in the employment context, his behavior at this meeting contradicted his official purpose.

29. For example, Mr. Tshibaka wore to the meeting a t-shirt emblazoned with the text "I'M WITH [J]". The shirt was clearly intended to convey that Mr. Tshibaka had no interest in serving as an impartial HR representative who would listen fairly and objectively to employee complaints regarding JE. Instead, his attire reflected his partisanship towards JE and the Mayor's preferred position of tolerating the discriminatory conduct.

30. Ms. MacAlpine's termination was directly connected to her refusal to stay silent about JE and the Loussac employees' complaints about her conduct.

31. Ms. MacAlpine's termination has exacerbated the decline in morale of employees at Loussac, as they now fear retaliation more than ever for speaking out against JE. For example, after Ms. MacAlpine's termination, Employee B resigned their position mainly because of the intolerable work environment JE had created.

32. Ms. MacAlpine's abrupt termination has caused her significant emotional distress, financial loss, and practical hardship.

33. Ms. MacAlpine filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on November 1, 2022. On November 23, 2022, Ms. MacAlpine received a right-to-sue letter from the EEOC. A true and correct copy of this notice and letter is attached as Exhibit 3.

## COUNT I

### Violation of Title VII of the Civil Rights Act of 1964

34. All foregoing allegations are incorporated into this count.

35. 42 U.S.C. 2000e-2 prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.

36. 42 U.S.C. 2000e-3 prohibits an employer from retaliating against an employee for opposing any practice made unlawful by Title VII of the Civil Rights Act of 1964.

37. As alleged above, MOA intentionally retaliated against Ms. MacAlpine for opposing discriminatory practices made unlawful by Title VII of the Civil Rights Act of 1964.

38. This conduct violated Title VII.

## DEMAND FOR JURY

Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

Based on the foregoing, Plaintiff requests the following relief:

A. An injunction restoring her to her former position;

B. An award of back pay, front pay, and compensatory damages in an amount to be demonstrated at trial;

C. An award of punitive damages;

D. An award of costs and reasonable attorney's fees;

E. Leave to amend this Complaint as needed; and

F. For such other relief the Court deems just and equitable.

ASHBURN & MASON, P.C.
Attorneys for Plaintiff Heather MacAlpine

DATED: 2023-02-21      By: /s/ Eva R. Gardner
                           Eva R. Gardner
                           Alaska Bar No. 1305017

DATED: 2023-02-21      By: /s/ Benjamin J. Farkash
                           Benjamin J. Farkash
                           Alaska Bar No. 1911095

ASHBURN & MASON P.C.
LAWYERS
1227 WEST 9TH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
TEL 907.276.4331 • FAX 907.277.8235

COMPLAINT
*MacAlpine v. Municipality of Anchorage et al.*, Case No. 3:23-cv-_____      Page 13 of 13

Case 3:23-cv-00037-SLG      Document 1      Filed 02/21/23      Page 13 of 13